[No. 11490.   In Bank. — November 29, 1889.]

## IN THE MATTER OF JAMES H. HARRIS, AN INSOLVENT DEBTOR.

INSOLVENCY — OPPOSITION TO DISCHARGE — AFFIDAVIT OF INSOLVENT — EVIDENCE. — The affidavit of the insolvent required as a condition precedent to his discharge, showing that he has been guilty of no act which would prevent his discharge, or render it invalid if obtained, is admissible in evidence to show the facts it was intended to show upon the trial of an opposition by creditors to his discharge.

ID. — BURDEN OF PROOF. — The burden is upon the creditors opposing the discharge of an insolvent, who has filed the requisite affidavit for his discharge, to prove that he has been guilty of some fraudulent act or omission which the statute makes a barrier to his discharge.

ID. — PREFERENCE OF CREDITOR — ADMISSION OF PLEADINGS — OATH OF INSOLVENT. — The preference of a creditor by payment at a time when the debtor did not know that he was insolvent, or contemplated insolvency, is no bar to his discharge in insolvency. An admission by failure of the insolvent to deny the allegation of such payment in contemplation of insolvency, in the original petition of the creditors for adjudication of involuntary insolvency, which petition and the answer of the insolvent had served their purpose when that end was accomplished, will not overcome the effect of the insolvent's oath to the contrary upon his application for discharge, especially if the petition did not aver that the payment was made fraudulently, or for the purpose of preferring the payee, or of preventing the money from coming to the hands of the assignee, or of being distributed in satisfaction of his debts, and the oath of the insolvent which was in evidence tended directly to negative these assumed facts.

ID. — ADMISSION OF PLEADINGS — INSTRUCTION. — When the pleadings upon the trial by jury of an opposition to the discharge of an insolvent contain no admission of a payment by the insolvent in contemplation of insolvency, an instruction that the pleadings contain such an admission is misleading and erroneous, notwithstanding such admission in the answer to the original petition of creditors for adjudication of insolvency.

ID. — DISCHARGE OF INSOLVENT — APPOINTMENT OF ASSIGNEE. — The insolvent debtor has nothing to do with the appointment of the assignee,

and his discharge cannot be hindered or delayed by the failure of the creditors to appear and appoint an assignee; but he is entitled to apply for his discharge at any time after the expiration of three months from the adjudication of insolvency.

Id. — Expenses of Insolvency — Assignment of Accounts to Attorney. — When the value of accounts assigned by an insolvent debtor to his attorney, for the purpose of paying expenses of the insolvency proceedings, is not unreasonably large, the creditors have no cause of complaint on account of it.

Appeal from a judgment of the Superior Court of Monterey County, and from an order refusing a new trial.

The facts are stated in the opinion.

*N. A. Dorn*, and *W. M. R. Parker*, for Appellants.

*Geil & Morehouse*, for Respondents.

Belcher, C. C.—The material facts of this case are as follows: On the eighteenth day of May, 1883, certain creditors of James H. Harris filed in the superior court of Monterey County a petition, asking that he be adjudged an insolvent. The petition alleged, among other things, "that the respondent has committed an act of insolvency, in that he did, heretofore, to wit, on or about the thirtieth day of March, 1883, being insolvent, and in contemplation of insolvency, . . . . make a payment and transfer of property, consisting of money, to the amount of about one thousand dollars, then and there belonging to said respondent, unto one Charles Harris, brother to said respondent." Harris filed an answer to the petition, in which he denied "that on the thirtieth day of March, 1883, or at any other time, he, the said Harris, made a payment of one thousand dollars, or any greater sum than five hundred dollars, to Charles Harris."

The court made an order adjudging Harris to be an insolvent debtor, and directing the sheriff of the county to take possession of all his estate, real and personal,

except such as was by law exempt from execution, and of all his deeds, vouchers, books of account, and papers, and to keep the same safely until the appointment of an assignee. The court also by its order appointed a time and place for the creditors to meet and prove their debts and choose one or more assignees of the estate. Due notice of this order was published, but at the time and place appointed none of the creditors appeared. Thereupon the court made an order appointing one Graves assignee of the estate, and fixing the amount of his bond, but he never accepted the place or qualified, and no assignee was ever thereafter appointed.

Subsequently, and more than three months after the adjudication of insolvency, Harris applied to the court for a discharge from his debts. Three of his creditors opposed his discharge, and filed specifications, in writing, of the grounds of their opposition. One of the specifications was, in substance, that on or about the 30th of March, 1883, Harris made a fraudulent payment of one-thousand dollars to one Charles Harris, who was then his creditor, and that Harris was then insolvent and in contemplation of insolvency, and made the payment for the purpose of perferring Charles Harris, and preventing the money from going into the hands of an assignee and being distributed, under the insolvent act, in satisfaction of his debts. By his answer Harris denied that he paid Charles Harris the sum of one thousand dollars, or any sum of money whatever, on the 30th day of March, 1883, or that he ever made any payment to him fraudulently, or in contemplation of insolvency, or for the purpose of preferring him as a creditor, or for the purpose of preventing his property from going into the hands of an assignee and being distributed, under the insolvent act, in satisfaction of his debts, but averred that on the 10th day of March, 1883, Charles Harris was his creditor for the sum of five hundred dollars, and no more, and was about to leave the state; that on that day

he paid him the said sum of five hundred dollars, in satisfaction of his debt, and that the payment was made in good faith, and in the ordinary course of business, and without any view of preferring him as a creditor, or with any design of, view of, or contemplation of insolvency.

Upon the issues raised by these pleadings the matter was tried before a jury; and under the order of the court Harris commenced the trial by offering in evidence the petition of the creditors that he be adjudged insolvent, his answer thereto and all the orders and papers made and filed in the case up to that time. Among the papers so offered was the affidavit of the insolvent, required by section 49 of the insolvent act, that he had not done, suffered, or been privy to any act, matter, or thing specified in the act, as ground for withholding his discharge, or as invalidating such discharge, if granted. The opposing creditors objected to this oath being received in evidence, on the ground that it had been prematurely filed, and was incompetent and immaterial to show compliance with the insolvent law. The objection was overruled and an exception reserved.

Harris then rested his case, and the creditors moved the court that the jury be instructed to find against him, and that his discharge be denied, on the ground, — 1. That the petition of the creditors alleged that on or about the 30th of March, 1883, Harris, being insolvent and in contemplation of insolvency, made a fraudulent payment of one thousand dollars to Charles Harris, and the answer to the petition admitted the allegation to be true; 2. That no assignee of the estate had ever qualified.

The court denied the motion, and the creditors excepted to the ruling.

The creditors then called Harris as a witness, and he testified in effect, among other things, that he never knew that he was insolvent or contemplated insolvency until some time in April, 1883.

LXXXI. CAL.—23

At the conclusion of the testimony, the court instructed the jury very fully, and as we think correctly, upon the law of the case, but refused to give an instruction asked for by the creditors, which reads as follows: —

"The said James H. Harris has, under and by the pleadings in this case, admitted that on or about the thirtieth day of March, 1883, he, then being insolvent and in contemplation of insolvency, did pay to one Charles Harris, his brother, the sum of five hundred dollars. Now, if you find from the evidence in this case that he made said payment to his said brother as a creditor, or for the purpose of preventing the said five hundred dollars from coming into the hands of his assignee, or being distributed under the insolvent act of this state in satisfaction of his debts, then I charge you that the said James H. Harris is not entitled to a discharge under said act, and your verdict should be for contestants."

By their verdict the jury found that Harris had not been guilty of fraud, and that he was entitled to be discharged from his debts, and thereupon the court entered judgment in his favor.

The contesting creditors moved for a new trial, which was denied, and have appealed from the judgment and order.

1. We see no error in the admission in evidence of the insolvent's oath. The statute makes the taking and subscribing of such an oath by an insolvent debtor a condition precedent to his discharge (Insolvent Act, sec. 49); and the evident purpose of the requirement is to show to the court that the insolvent has not been guilty of any act which would prevent his obtaining a discharge, or render it invalid if obtained. It must be proper, therefore, for an insolvent debtor to make the required oath when he applies for his discharge, and to introduce it in evidence to show the facts which it was intended to show.

2. The court properly denied the motion made by the creditors when Harris rested his case. They in effect asked that he be nonsuited; and yet they were the actors, and the burden was upon them to show that he had been guilty of some fraudulent act or omission which the statute made a barrier to his discharge. The original petition and answer thereto were intended only to put the respondent into involuntary insolvency, and they had served their purpose when that end was accomplished. Besides, the petition did not charge that the payment was made fraudulently, or for the purpose of preferring the payee, or of preventing the money from coming into the hands of the assignee, or of being distributed in satisfaction of the insolvent's debts, and the oath of the insolvent, which was in evidence, tended directly to negative these assumed facts.

The point that the application for a discharge was premature because no assignee had qualified is without merit. The appointment of an assignee rests with the court and creditors; the debtor has nothing to do with it. The creditors failed to appear at the time fixed for the appointment of an assignee, but this was not the fault of the respondent, and his discharge could not be hindered or delayed thereby. The statute authorizes the debtor to apply to the court for a discharge from his debts at any time after the expiration of three months from the adjudication of insolvency, and there are no limitations or restrictions on his doing so. (Insolvent Law, sec. 48.)

3. The instruction which was asked by the creditors and refused by the court was misleading and erroneous. The statement that "the said James H. Harris has, under and by the pleadings in this case, admitted," etc., was not true. The pleadings in the case consisted of the specifications by the creditors of the grounds of their opposition to the discharge, and the answer of the respondent thereto; and this answer, as we have seen,

fully denied all of the averments of fraud made in the specifications. The refusal to give the instruction was therefore proper.

4. There was testimony which, if believed, justified the verdict of the jury. It tended to show that the settlement with Carr was made before the respondent knew that he was insolvent, or contemplated insolvency. It also tended to show that the value of the accounts which were assigned by respondent to his attorney for the purpose of paying the expenses of the insolvency proceedings was not unreasonably large; and if this be so, it is admitted that the assignment was properly made, and that the creditors have no cause of complaint on account of it.

Looking, then, at the whole case, we see no prejudicial error, and therefore advise that the judgment and order be affirmed.

HAYNE, C., and FOOTE, C., concurred.

The COURT.— For the reasons given in the foregoing opinion, the judgment and order are affirmed.

THORNTON, J., dissented.